## THE LAURA.

*(Circuit Court, S. D. New York.* September 12, 1881.)

1. PENALTIES AND FORFEITURES—POWER OF THE SECRETARY OF THE TREASURY
—STEAM-VESSELS—CARRYING PASSENGERS IN EXCESS.

The secretary of the treasury may remit claims of informers and of the United States to penalties and forfeitures incurred, under sections 4465 and 4469 of the Revised Statutes, for carrying a greater number of passengers than the certificate of inspection permits, and such remission will operate as a full discharge.

2. CONSTITUTIONAL LAW—REV. ST. § 5294.

Section 5294 of the Revised Statutes, providing that the secretary of the treasury may, in certain cases, remit fines and penalties, etc., is not unconstitutional. It does not infringe the pardoning power of the president.

In Admiralty.

In this case I find the following facts:

On the thirty-first of May, 1880, the steam-boat Laura, then a vessel propelled wholly by steam, and not a public vessel of the United States, nor a vessel of any other country, nor a vessel propelled in whole or in part by steam for navigating canals, and also then a steam-vessel navigating waters of the United States, which then were highways of commerce and open to competitive navigation, and also then a steam-vessel within the meaning of and subject to the provisions of title 52 of the Revised Statutes of the United States, entitled "Regulation of Steam-vessels," and which had theretofore been duly inspected both as to her hull and as to her boilers, and to which a certificate of inspection had been granted on or about July 2, 1879, in accordance with the provisions of said title, in which certificate of inspection it was stated that said vessel had suitable accommodations for and was allowed to carry 142 passengers, carried as passengers on board of her from Bridgeport, in the state of Connecticut, to the city of New York, in the state of New York, 422 passengers. On the same day the said vessel carried, as passengers on board of her, from the said city of New York to Bridgeport, aforesaid, 417 passengers. Each of the said 839 passengers paid or became liable for the sum of at least 20 cents as passage money.

On the seventeenth of November, 1880, the Bridgeport Steam-boat Company, a corporation, the owner of the said vessel, received, on its application therefor, a warrant of remission from the secretary of the treasury of the United States, of which the following is a copy:

"Warrant of remission. To all to whom these presents shall come: I, John Sherman, secretary of the treasury of the United States, send greeting: Whereas, a petition, bearing date the eighteenth day of October, 1880, has been made before me by the Bridgeport Steam-boat Company, by J. B. Hubbell, superintendent, for the remission of a forfeiture of the passage money and certain penalties, amounting to $5,661, alleged to have been incurred by the steam-boat Laura, on the thirty-first day of May, A. D. 1880, by carrying an excess of passengers over the number allowed by law, viz., on a trip from Bridgeport to New York 280 passengers in excess, and on a trip from New York to Bridgeport 275 passengers in excess, under the Revised Statutes of

the United States, §§ 4465 and 4469; and whereas, I, the said secretary of the treasury, having maturely considered the said petition, and being satisfied that the said offences were committed without wilful negligence, or intention to evade the requirements of the law, and that no danger to human life was caused thereby: Now, therefore, know ye, that I, the said secretary of treasury, in consideration of the premises, and by virtue of the power and authority to me given by the 5294th section of said statutes, do hereby decide to remit to the petitioner all the right, claim, and demand of the United States, and of all others whatsoever, to said forfeiture of passage money and penalties, on payment of costs, if any there be. Given under my hand and seal of office in the city of Washington, the seventeenth day of November, in the year of our Lord one thousand eight hundred and eighty, and the one hundred and fifth year of the independence of the United States.

[Seal.]      "JOHN SHERMAN,
"Secretary of the Treasury."

The costs were taxed and paid into the district court by the claimant. This suit was commenced in the district court October 6, 1880. The answer was filed November 3, 1880. The exceptions to the answer were filed November 11, 1880. The order disposing of said exceptions was filed December 22, 1880. The supplemental answer was filed December 23, 1880. The exceptions to the supplemental answer were filed December 29, 1880. The order disposing of said exceptions was filed January 5, 1881. The final decree was filed on the same day. The appeal of the libellant is only from that decree, and is made on the ground that the secretary of the treasury had no power to remit the penalties sued for in this case.

On the foregoing facts I find, as a conclusion of law, that the said warrant of remission is a complete discharge of said penalties and passage money, and that the claimant is entitled to a decree that the libel be dismissed; that the clerk of this court pay out to the proctor for the libellant his portion of the taxed costs of the libellant in the district court on deposit herein; that the remainder thereof be distributed among the officers of the district court entitled thereto; and that the libellant pay to the claimant its costs in this court, to be taxed.      SAMUEL BLATCHFORD,
Circuit Judge.

*Henry G. Atwater,* for libellant.

*Dennis McMahon,* for claimant.

BLATCHFORD, C. J. This suit is founded on sections 4465 and 4469 of the Revised Statutes. The former section provides as follows:

"It shall not be lawful to take on board of any steamer a greater number of passengers than is stated in the certificate of inspection; and for every violation of this provision the master or owner shall be liable to any person suing for the same, to forfeit the amount of passage money, and $10 for each passenger beyond the number allowed."

The latter section provides that the penalties imposed by the former section "shall be a lien upon the vessel, * * * but a bond may, as provided in other cases, be given to secure the satisfaction of the judgment." The provisions of section 5294, under which the warrant of remission in this case was granted, are as follows:

614 .                    FEDERAL REPORTER.

"The secretary of the treasury may, upon application therefor, remit or mitigate any fine or penalty provided for in laws relating to steam-vessels, or discontinue any prosecution to recover penalties demanded in such laws, excepting the penalty of imprisonment, or of removal from office, upon such terms as he in his discretion shall think proper; and all rights granted to informers by such laws shall be held, subject to the secretary's power of remission, except in cases where the claims of any informer to the share of any penalty shall have been determined by a court of competent jurisdiction, prior to the application for the remission of the penalty; and the secretary shall have authority to ascertain the facts upon all such applications, in such manner and under such regulations as he may deem proper."

Title 52 of the Revised Statutes, in which sections 4465 and 4469 are found, is entitled "Regulation of Steam-vessels." Those sections and section 5294 were originally enacted as part of the act of February 28, 1871, entitled "An act to provide for the better security of life on board of vessels propelled in whole or in part by steam, and for other purposes," (16 St. at Large, 440;) section 4469 being a part of section 48 of that act, and section 4469 being a part of section 49, and 5294 being, in substance, section 64.

It is contended for the libellant that the warrant of remission is void and of no effect, because section 5294 is unconstitutional in that it infringes on the pardoning power vested in the president. The constitution (article 2, § 2) provides that the president "shall have power to grant reprieves and pardons for offences against the United States, except in cases of impeachment." It is contended that this power is exclusive, and that congress cannot lawfully grant to the secretary of the treasury the power conferred on him by section 5294.

The power of the president to pardon has always been construed to extend to the remission of fines, penalties, and forfeitures accruing to the United States for offences against the United States. Op. Attys. Gen. 418.

In *U. S.* v. *Lancaster,* 4 Wash. 64, a vessel had been seized by the collector and libelled for forfeiture for a violation of the embargo laws, and released on a bond for her value. She was condemned as forfeited, and a suit was brought by the United States on the bond. Afterwards the president remitted to the defendant all the right and interest of the United States in and to said bond, and required all proceedings on the part of the United States to be forthwith discontinued. The question arose in the suit whether the pardon of the president affected the rights of the officers of the customs to the moiety of the forfeiture. It was held that the terms of the pardon were such as to remit only the interest of the United States, and not

the rights of the officers. The question as to the power of the president, by pardon, to defeat the inchoate rights of the officers was not passed upon.

In *U S* v. *Morris*, 10 Wheat. 246, it was held that the interests of officers of the customs in forfeitures were subordinate to the authority of the secretary of the treasury, under section 1 of the act of March 3, 1797, 1 St. at Large, 506, (now section 5292 of the Revised Statutes,) to remit them. In the case of a vessel condemned as forfeited to the United States for a violation of the slave-trade act, the president was advised to remit only the interest of the United States, on the ground that his pardon could not defeat the vested rights of the seizing officer. 4 Op. Attys. Gen. 573. On the question whether the president had the power to pardon offences committed by the owners or masters of steam-vessels in respect to the transportation of passengers in violation of certain statutes, he was advised that he had such power; and the question whether he had authority to remit, by pardon, a penalty accruing to individuals, was suggested, but not discussed. 6 Op. Attys. Gen. 393. In the case of a vessel arrested for violating a statute in regard to the transportation of passengers, a remission being applied for to the secretary of the treasury, under section 1 of the act of March 3, 1797, the question occurred whether the case came within the pardoning power of the president. The secretary was advised—

(1) That the president had power to pardon the imprisonment, fines, and forfeitures imposed for violating the provisions in regard to space for, and number of, passengers, unless, perhaps, as regarded a forfeiture, the right of which had duly vested in the custom-house officers, or others, except the United States; (2) that it was doubtful whether the president had power to remit such forfeiture; (3) that the secretary of the treasury had power to remit all forfeitures of vessels for carrying an excess of passengers; (4) that the president had power to pardon in all cases of vessels libelled by reason of liens on them for penalties imposed by the statute; (5) that the secretary of the treasury had the concurrent power to remit in the last-named cases, but any doubt could be cured by the authority of the president, as no interest but that of the United States was affected; (6) that, as the act of 1797 afforded the means of judicial investigation as to the question of remission, it was more convenient in the cases of seizures, and prosecutions instituted by officers of the customs, to dispose of that class of seizures in that way, than to refer them to the unaided discretion of the president. Id. 488.

In *U. S.* v. *Harris*, 1 Abb. (U. S.) 110, a person was convicted and fined for violating the internal revenue law. Afterwards the court adjudged that H. was the informer, and that one-half of the fine should be for his use and the remainder for the use of the United

States. Afterwards, the president, by a pardon, remitted to the defendant the payment of two-thirds of the fine. One-third of the fine, with interest, was paid into court. The informer claimed, and was allowed, by the court therefrom the whole of the sum adjudged to him, on the ground that the president had no right to remit any of the part of the fine so adjudged to the informer, and that he was entitled to the whole of such part as if there had been no remission. The conviction was under a statute—act of June 30, 1864, § 41, (13 St. at Large, 239)—which provided that all suits for fines under it should be in the name of the United States. The court remarked that where the prosecution was wholly in the name of the United States it saw nothing in any of the authorities which denied to the president the power, by pardon, to remit the interest of an informer before judgment.

The view urged by the libellant is that the power of the president to pardon is exclusive; that no part of it can be exercised by any one else without infringing on the power of the president; that if the secretary of the treasury can pardon without the president's concurrence, he may grant pardons which the president would refuse; that if congress can authorize the secretary to grant pardons, it can itself grant them, and prescribe the terms and conditions under which they shall be granted; and that if it can authorize the secretary to remit penalties incurred under the statute in question it can authorize him, or any one else, to remit the punishment of any offence, and can so legislate that after the president has refused to grant a pardon it can still be granted under authority conferred by congress. In support of this view, the case of *Ex parte Garland*, 4 Wall. 333, is cited, as holding that the power of the president to pardon is unlimited, extending to every offence known to the law, and not subject to legislative control, and that congress can neither remit the effect of such pardon nor exclude from its exercise any class of offenders. The case of *U. S.* v. *Klein*, 13 Wall. 128, is also referred to, as holding that congress cannot impair the effect of a pardon, because that would be to infringe the constitutional power of the president.

There is not, in this case, any question raised as to the effect of a pardon which has been granted by the president, as there was in *Ex parte Garland* and in *U. S.* v. *Klein*. The question is not as to any restriction of the pardoning power of the president. It is not claimed that the secretary alone could remit this forfeiture, and that the president could not. The practice of the government, as is seen from the citations, has been to regard the power of the secretary

to remit penalties and forfeitures, of the character of those in the present case, as a valid power, in concurrence with the power of the president to pardon in the same cases. The existence of the power in the secretary is not regarded as interfering with the pardoning power of the president. The decision in *U. S.* v. *Morris*, 10 Wheat. 246, that the secretary's remission of the entire forfeiture—the vessel having been seized as forfeited to the United States, and prosecuted in the name of the United States, and condemned—had the effect to extinguish the interest of the officers of the customs in the property, necessarily recognized the fact that the power of the secretary to remit was a valid power, and did not infringe on the pardoning power of the president. A power in the secretary to remit penalties and forfeitures has existed by statute since 1790, and has never been regarded as invalid because of the existence of the power in the president to remit, by pardon, the same penalties and forfeitures. Even assuming, then, that the president could discharge, by pardon, the interest of the libellant in the forfeiture of this vessel, it does not seem that the secretary could not be lawfully authorized to discharge it.

But it may well be doubted whether the president's power of pardon extends to taking away the interest given by the statute to the libellant. If so, then there is no power of pardon to be interfered with by the remission of the secretary. The statute gives nothing to the United States. It does not authorize any prosecution by the United States by indictment or civil suit. It imposes a penalty, which is made a lien on the vessel, for doing what it declares it shall not be lawful to do; but the penalty is declared to be a pecuniary liability, not to the United States, but to any one who will sue for it. It is wholly to such person. While the unlawful act which gives rise to the suit, if to be called an offence, is one denounced by a statute of the United States, yet it may well be doubted whether it is an offence *against* the United States, in the sense of the constitution; and, still more, whether, if the United States could sue for the penalty which is given to "any person suing for the same," there is any offence against the United States which can be pardoned by the president beyond what is involved in such right of the United States to sue. The power, however, of the president to pardon has never been construed to extend to taking away such rights as the statute in this case vests in the libellant, where they have been asserted by a suit brought by an informer in his own name, and where they belong wholly to him, and the United States have no share in the

penalty. The case of *U. S.* v. *Harris, supra,* refers to the power of the president over the whole case, before judgment, as existing only where the prosecution is wholly in the name of the United States.

There is, therefore, nothing in the existence of the pardoning power which affects the present case. This being so, there can be no doubt that congress, which created the penalty, could provide any method of remitting it.

The next question is as to the construction of section 5294. It is contended, for the libellant, that that section does not give to the secretary power to remit a penalty after a suit has been brought by a private person to recover it. The matter is a very plain one. The power extends to "any fine or penalty;" that is, to all fines and penalties. It includes those given to individuals as well as those given to the United States. Probably, because of a doubt whether the pardoning power of the president could reach all cases, and because cases proper for remission would arise, the power of remission was confided to the secretary to be exercised on an ascertainment of facts, with the restrictions, however, that the power should not extend to remitting the penalty of imprisonment or of removal from office, or to affecting the rights of informers after they had been judicially determined before the application for remission.

It is contended that the power to remit is restricted by the statute, after suit, to cases where the suit is by the United States and under the control of its officers. It is also contended that the power given to remit applies only to cases before suit is brought, and that the power to discontinue prosecutions is limited to prosecutions brought by the United States. These views do not seem well founded. The statute covers the remission of "any" fine or penalty, and although, under the words "discontinue any prosecution," the secretary should be held to be restricted to discontinuing prosecutions in the name of the United States, yet he may remit any penalty.

The limitation of the power of discontinuing prosecutions does not restrict the power of remission. A prosecution may be discontinued without remitting the penalty, and there may be reasons for doing so; but no reason is perceived why the power to "discontinue any prosecution" does not include a suit like the present. There is nothing in section 5294 to suggest that the power of remission or of discontinuance was not intended to be as broad as the imposition of penalties, except as to the particular matters specially excepted.

It is argued that the libellant is not an informer, within section 5294, because he is not a person on whose information the United

States bring suit. But this is too restricted a meaning of the word. When the section speaks of "rights granted to informers by such laws" it means rights granted to individuals, and not to the United States. The libellant is none the less an informer because he sues in his own name, and is entitled to the whole penalty. The object of the statute was to provide in favor of the party incurring the penalty a mode of mitigating it, and the mischief sought to be remedied was the same whoever was to receive the penalty. In section 976 the person to whom the whole of a penalty in a penal statute is directed to accrue, and who sues for it in his own name, is called an "informer." The suggestion that in section 5294 only a person who is entitled to part of a penalty is an informer is too narrow a view. If a person has the whole of a penalty he has all its shares, and his claims are fairly included within the words "the claims of any informer to the share of any penalty." A person may be an informer without being a "plaintiff on a penal statute," in the sense of section 975; but a "plaintiff on a penal statute," such as the libellant is, is an informer within section 5294.

The fact that by section 41 of the act of August 30, 1852, (10 St. at Large, 75) in regard to steam-vessels, all the penalties imposed by it were given to any person who would sue for them, and that no power of remission of penalties was given by that act, has no tendency to show that under the act of 1871 all penalties, some of which are to go wholly to the informer and some partly to the informer and partly to the United States, are not within the power of remission given to the secretary.

The warrant of remission must be held to be a complete discharge of the penalties and the passage money sued for in this case, and there must be a decree dismissing the libel and directing the clerk of this court to pay out to the proctor for the libellant his portion of the taxed costs of the libellant in the district court, on deposit herein, and to distribute the remainder thereof among the officers of the district court entitled thereto, and ordering that the libellant pay to the claimant its costs in this court, to be taxed.

See 5 FED. REP. 133.